# **EXHIBIT B**

Return Date: April 28, 2015          :  SUPERIOR COURT
                                     :
MICHAEL CORBO                        :
                                     :  JUDICIAL DISTRICT OF
                                     :   NEW LONDON
                                     :
        VS.                          :  AT NEW LONDON
                                     :
ALERE, INC. :                        :
MDINR, LLC                           :
LINCARE, INC.                        :  APRIL 1, 2015

## COMPLAINT

**COUNT ONE: (Product Liability as to Alere)**

1.   Plaintiff, Michael Corbo is a resident of Colchester, Connecticut.

2.   Defendant Alere, Inc ("Alere") is incorporated under the laws of Delaware, and has

     its principal offices located at 51 Sawyer Road, Suite 200, Waltham, Massachusetts.

     Alere manufactures medical devices to patients, including a medical device called the

     *Alere* INRatio2 Prothrombin/INR, which is designed to allow patients to self-monitor

     their anticoagulant levels.

3.   Defendant MdINR, LLC ("MdINR") is a limited liability company per the laws of

     Delaware, with principal offices in Clearwater, Florida, and is a wholly owned

     subsidiary of Defendant, Lincare, Inc.

4.   MdINR leases medical devices to patients, including the *Alere* INRatio2

     Prothrombin/INR referenced in paragraph 2.

5.   Defendant Lincare, Inc. ("Lincare") is incorporated under the laws of Delaware, with principal office in Clearwater, Florida.  Defendants Lincare and MdINR are alter egos of one another.

6.   On May 17, 2013, plaintiff Michael Corbo was started on anticoagulant, Warfarin, more commonly known as Coumadin.

7.   On June 6, 2013, MDINR / Lincare leased Mr. Corbo an *Alere* INRatio2 Prothrombin/INR coagulation monitoring system, part number 28184 Rev A, serial number 111038911 ("the device"), along with INRatio PT/NR test Strips, part number 28227 Rev A ("test strips"), with the understanding that he could easily and safely home-monitor his anticoagulant levels.

8.   Mr. Corbo used the device and test strips from June 2013 through July, 2014.  He used the products appropriately, and consistent with all instructions given to him.

9.   In July, 2014, Mr. Corbo began developing symptoms consistent with dangerously high INR (anticoagulant) levels.  His symptoms included extensive bruising, blood loss, internal bleeding, kidney damage and nerve damage.

10.  During this timeframe, in July, 2014) the device was registering therapeutic (i.e. normal) INR levels.  However, when plaintiff was ultimately hospitalized on July 30, 2014, it was determined through laboratory testing that his actual INR was 13.5 (target range 2-3).

11.  Upon information and belief, in 2012, 2013, and 2014 there were over 100 incidents like Mr. Corbo's where *Alere* INRatio2 Prothrombin/INR devices gave a reading near

2

the INR target, yet the actual anticoagulant reading, as measured in the lab was much higher.

12.  In April, 2014, Alere issued an "Urgent Field Safety Notice" to Alere INR customers warning of incidents of inaccurately low INR results.

13.  On May 6, 2014, Alere issued a an "Urgent Medical Device Recall" of the Alere INRatio2 PT/INR Professional Test Strips, which was announced by the FDA on May 8, 2014.

14.  On December 5, 2014 the US FDA announced a recall of all Alere INRatio2 PT/INRMonitoring Systems (Professional and prescription Home Use) for "Falsely Low INR Test Results".

15.  On January 9, 2015 the US FDA announced that this recall was upgraded to class 1, the highest level, where there is a reasonable probability that the use of the product will cause serious adverse health consequences or death.

16.  The defendant, Alere is liable and legally responsible to the plaintiff for the plaintiff's injuries caused by the medical device and test strips by virtue of General Statutes Sec. 52-572m, et seq.

17.  At all relevant times, Alere was a "product seller" as that term is defined in the Connecticut Product Liability Act.

18.  The medical device and test strips, warnings and instructions in question were not altered or modified in any way by the plaintiff or any third party from the condition in which they were manufactured, assembled and/or leased by the defendants.

3

19.    The medical device and test strips were defective in a way beyond that which would be contemplated by an ordinary consumer.

20.    DESIGN AND MANUFACTURING DEFECT:  The *Alere* INRatio2 Prothrombin/ INR and test strips were inadequately designed and/or manufactured in that they registered false normal anticoagulant levels.  An ordinary consumer would have expected that a medical device intended to measure levels of anticoagulation would indeed register accurate and reliable results.  The medical device failed in this intended and expected purpose and is therefore defective per Conn. Gen. Stat. Sec. 52-572m.

21.    MALFUNCTION THEORY:  A consumer using this product, including Mr. Corbo, does so with the expectation that the device will render an accurate reading of anticoagulant levels.  A false reading of anticoagulant levels is not something that ordinarily occurs in the absence of a product defect.  Any unspecified design or manufacturing defect not particularized in the preceding paragraphs which the evidence at during discovery and at trial may also establish, likely existed at the time the device and/or test strips left Alere's control.

22.    Given the numerous other recalls, defendant's decision to recall the product, and the fact that the product is supposed to give a correct reading --- it is reasonable to infer that the defect was not the result of possible causes not attributable to Alere.

A.  NEGLIGENCE

23.    Defendant Alere was negligent in the following respects:

4

a.    It released the product to market prior to conducting sufficient testing for efficacy and safety;

b.    It utilized legal loopholes to rush the device and test strips to market, and to get the product approved by CMS/Medicare;

c.    It manufactured, marketed, and sold a product whose design, intended purpose, and promoted utility was to diminish or substitute the physician-patient relationship, and to diminish the involvement of a physician in the monitoring of a potentially deadly medical condition;

d.    It encouraged its customers to self-monitor a medical condition in lieu of physician monitoring;

e.    It continued to sell and market a product which it knew or should have known was dangerous and/or defective;

f.    Although Alere either knew, or should have known, that the device and test strips were giving false low INR readings as early as 2012 (or sooner), it continued to manufacture, market, promote and sell the products through 2014; and

g.    It failed to recall the products in a timely manner when it first knew or should have known of the dangers of the products.

h.    It failed to warn end users, including plaintiff, of the risks of the medical device, even after it learned of its potential dangers.

B.  NEGLIGENCE- POST SALE DUTY TO WARN

24.    Alere failed to exert adequate efforts to notify its equipment dealers such as MdINR / Lincare of the false-low INR readings.

C.  LACK OF ADEQUATE WARNINGS AND INSTRUCTION CGS 52-572q.

25.    Alere is liable to the Plaintiff as provided for under the Connecticut Products Liability Act for its  lack of adequate warnings and instruction within the meaning of 52-572q.

D.  BREACH OF EXPRESS WARRANTY

26.    Alere is liable to the Plaintiff as provided for under the Connecticut Products Liability Act for a  breach of its Express warranties concerning the product and its fitness for use.

E.  BREACH OF IMPLIED WARRANTY

27.    Alere is liable to the Plaintiff as provided for under the Connecticut Products Liability Act for a  breach of its implied warranties.

F.  RECKLESSNESS

28.    Alere was aware of of substantial risks to patient's health and risk attendant to self-monitoring as encouraged by the company.  The risk of self monitoring was amplified when Alere became aware the incidents of false readings.  Motivated by

6

profit, Alere consciously disregarded these known substantial risks, and placed its desire for profit above and beyond its regard for patient life and safety.

29.   Alere's motive for doing the same was to preserve its commercial reputation and to minimize the financial impact of having to undertake a more extensive recall or repair effort and in so doing placed at secondary importance the health safety and welfare of the users of its equipment.

30.   Alere's conduct was in derogation and in conscious disregard to the Plaintiff's rights to health and safety and personal welfare, and plaintiff is entitled to punitive damages pursuant to Conn. Gen. Stat. Sec. 52-240b.

31.   In consequence of these events, plaintiff developed a serious medical condition, including severe bruising all over his body, pain and fatigue, low red blood cell count, internal bleeding and acute renal failure (kidney failure) and nerve damage.

32.   In all probability, the injuries sustained by plaintiff will necessitate further care and are permanent in nature.  Moreover, his  injuries will be the source of continuing pain and disability.  In addition, plaintiff suffered great physical and mental pain and may be unable to participate in some of the activities he engaged in prior to said accident.

33.   Plaintiff also suffered sleeplessness, nervousness, physical and emotional pain and suffering.

34.   As a further result of the aforesaid incident and the injuries and effects thereof, the Plaintiff has been required and will be required in the future to spend sums of money

for medical treatment and hospital treatment, nursing, surgical care, medicines, x-rays and related expenses.

35.   As a result of the aforesaid incident and the injuries and effects thereof, the Plaintiff has been denied some of the enjoyment and usual pleasures of life and will be denied some such pleasures in the future due to the limitations of activities corresponding to his injuries.

36.   As a further result of the aforesaid incident and the injuries and effects thereof, the Plaintiff has been unable to perform occupational duties and has lost income from his employment and his earning capacity may have been permanently impaired.

**COUNT TWO: ( MdINR / Lincare)**

1-15   Paragraphs 1-15 of Count One are incorporated herein, as if fully stated herein as Paragraphs 1-15 of this Count Two.

16.   MdINR / Lincare market the *Alere* INRatio2 Prothrombin/INR devices by promoting the ability to "test your anticoagulation levels in your own home", and further warrant and promote that:

> *As a Coumadin® patient you now have the option of checking your PT/ INR at home, at anytime. Testing at home is a convenient alternative to going to your doctor's office to check your INR levels, and frequent self- testing has been proven to reduce the risk of bleeding and clotting. Your doctor will continue to review your PT/INR test results and make any required changes to your dose . . . Testing your PT/INR at home is easy. We provide you with the same INR Monitor and test strips that doctors and nurses use in their offices.*

17. In April, 2014, the device manufacturer, Alere sent an "Urgent Field Safety Notice" to MdINR / Lincare regarding limitations to INRatio2 PT/INR Test Strips, and warning of the potential that the *Alere* INRatio2 Prothrombin/INR devices could give inaccurately low INR results. Despite receiving this letter, the warning was not passed on to Mr. Corbo.

18. On April 16, 2014 Alere sent an "Urgent: Medical Device Recall" to certain healthcare professionals initiating a voluntary recall for the Alere INRatio2 PT/INR Professional Test Strips, and Defendants MdINR / Lincare either knew or should have known of this "recall", but failed to pass this information on to its customer, Mr. Corbo, or otherwise make sure that Mr. Corbo stop use of the product.

19. On May 6, 2014 Alere initiated a voluntary Class 1 recall in the US of the INRatio2 PT/INR Professional Test Strips. Defendants MdINR either knew or should have known of this "recall", but failed to pass this information on to its customer, Mr. Corbo, or otherwise make sure that Mr. Corbo stop use of the product.

20. After Mr. Corbo was hospitalized, plaintiff contacted defendants MdINR / Lincare on August 6, 2014, after returning from the Hospital to ascertain if there were any known issues with the device and to advise them of his unfortunate experience with the product. Even at this point, Defendants failed inform Mr. Corbo of the known problems and recall.

21. The medical device and test strips were defective in a way beyond that which would be contemplated by an ordinary consumer.

22.   Defendants MdINR are in the business of leasing devices and test strips such as the
      one at issue in this case, and in fact leased the particular device and test strips which
      are at issue in this case, and are therefore a "product seller" as that term is defined in
      Conn. Gen. Stat. Sec. 52-572m.

23.   The medical device and test strips, warnings and instructions in question were not
      altered or modified in any way by the plaintiff or any third party from the condition
      in which it was manufactured, assembled and/or leased by the defendants.

24.   The defendant, MdINR / Lincare are strictly liable and legally responsible to the
      plaintiff for the plaintiff's injuries caused by the medical device and test strips by
      virtue of General Statutes  Sec. 52-572m, et seq., and the various theories of liability
      provided for by said statute.

25.   DESIGN AND MANUFACTURING DEFECT:  The *Alere* INRatio2 Prothrombin/
      INR and test strips were inadequately designed and/or manufactured in that they
      registered false normal anticoagulant levels.  An ordinary consumer would have
      expected that a medical device intended to measure levels of anticoagulation would
      indeed register accurate and reliable results.  The medical device failed in this
      intended and expected purpose and is therefore defective per Conn. Gen. Stat. Sec.
      52-572m.

26.   MALFUNCTION THEORY:  A consumer using this product, including Mr. Corbo,
      does so with the expectation that the device will render an accurate reading of
      anticoagulant levels.  A false reading of anticoagulant levels is not something that

ordinarily occurs in the absence of a product defect. Any unspecified design or manufacturing defect not particularized in the preceding paragraphs which the evidence during discovery or at trial may also establish, likely existed at the time the device and/or test strips left defendant's control.

27.   Given the numerous other recalls, defendants decision to recall the product, and the fact that the product is supposed to give a correct reading --- it is reasonable to infer that the defect was not the result of possible causes not attributable to Alere.

G. NEGLIGENCE THEORY:

28.   Defendants MdINR / Lincare were negligent in the following respects:

a.   Defendants failed to take reasonable measures to protect its customers, including Mr. Corbo, after learning that the product was giving false or faulty INR levels;

b.   Defendants failed to have reasonable measures in place to ascertain whether the product they leased was functioning safely and properly;

c.   Defendants failed to take adequate and reasonable measures to ensure that the product was functioning properly;

d.   Defendants failed to consider and react to customer complaints regarding failures and faulty readings;

e.   Defendants negligently represented and promised the efficacy, reliability and/or ease of use of the product;

f.   Defendants induced customer to rely on the product for correct readings of their INR levels;

11

g.     Defendants encouraged its customers to self-monitor a medical condition in lieu of physician monitoring;

h.     Defendants continued to sell and market a product which they knew or should have known was dangerous and/or defective;

i.     Defendants failed to warn end users, including plaintiff, of the risks of the medical device, even after they learned of its potential dangers; and

j.     Defendants failed to provide Mr. Corbo with a replacement for a product they knew or had reason to know was defective.

H.  LACK OF ADEQUATE WARNINGS AND INSTRUCTION CGS 52-572q.

29.   Defendants are is liable to the Plaintiff as provided for under the Connecticut Products Liability Act for its  lack of adequate warnings and instruction within the meaning of 52-572q.

I.  BREACH OF EXPRESS WARRANTY

30.    Defendants are liable to the Plaintiff as provided for under the Connecticut Products Liability Act for a  breach of its Express warranties concerning the product and its fitness for use.

J.  BREACH OF IMPLIED WARRANTY

31.   Defendants are liable to the Plaintiff as provided for under the Connecticut Products Liability Act for a  breach of its implied warranties.

K.  RECKLESSNESS

12

32. Defendants were aware of of substantial risks to patient's health and risk attendant to self-monitoring as encourage by the company. The risk of self monitoring was amplified when defendants became aware incidents of false readings. Motivated by profit, Defendants consciously disregarded these known substantial risks, and placed their desire for profit above and beyond its regard for patient life and safety.

33. Defendants motive for doing the same was to preserve its commercial reputation and to minimize the financial impact of having to undertake a more extensive recall or repair effort and in so doing placed at secondary importance the health safety and welfare of the users of the medical devices they had leased.

34. Defendants' conduct was in derogation and in conscious disregard to the Plaintiff's rights to health and safety and personal welfare, and plaintiff is entitled to punitive damages pursuant to Conn. Gen. Stat. Sec. 52-240b.

35. In consequence of these events, plaintiff developed a serious medical condition, including severe bruising all over his body, pain and fatigue, low red blood cell count, internal bleeding and acute renal failure (kidney failure) and nerve damage.

36. In all probability, the injuries sustained by plaintiff will necessitate further care and are permanent in nature. Moreover, his injuries will be the source of continuing pain and disability. In addition, plaintiff suffered great physical and mental pain and may be unable to participate in some of the activities he engaged in prior to said accident.

37. Plaintiff also suffered sleeplessness, nervousness, physical and emotional pain and suffering.

38. As a further result of the aforesaid incident and the injuries and effects thereof, the Plaintiff has been required and will be required in the future to spend sums of money for medical treatment and hospital treatment, nursing, surgical care, medicines, x-rays and related expenses.

39. As a result of the aforesaid incident and the injuries and effects thereof, the Plaintiff has been denied some of the enjoyment and usual pleasures of life and will be denied some such pleasures in the future due to the limitations of activities corresponding to his injuries.

40. As a further result of the aforesaid incident and the injuries and effects thereof, the Plaintiff has been unable to perform occupational duties and has lost income from his employment and his earning capacity may have been permanently impaired.

14

<u>PRAYER FOR RELIEF</u>

WHEREFORE, the Plaintiff prays for the following relief:

1. Money damages.

2. Punitive Damages Pursuant to Conn. Gen. Stat. Sec. 52-240b.

3. Such other relief as to law or equity pertain.

PLAINTIFF

By

JOSE M. ROJAS, ESQ.
His Attorney
The Rojas Law Firm, LLC
40 Russ Street
Hartford, CT  06106
(860) 232-3476
Juris No.  423940

15

**Return Date:** April 28, 2015    : SUPERIOR COURT

                                           :

MICHAEL CORBO                  :

                                           : JUDICIAL DISTRICT OF

                                           :  NEW LONDON

                                           :

          VS.                    : AT NEW LONDON

                                         :

ALERE, INC.                     :

MDINR, LLC                    :

LINCARE, INC.                 : APRIL 1, 2015

## STATEMENT OF AMOUNT IN DEMAND

The amount in demand, exclusive of interest and costs, exceeds the sum of Fifteen Thousand ($15,000.00) Dollars.

                                  PLAINTIFF

                                  By_____

                                  JOSE M. ROJAS, ESQ.

                                  His Attorney

                                  The Rojas Law Firm, LLC

                                  40 Russ Street

                                  Hartford, CT  06106

                                  (860) 232-3476

                                  Juris No.  423940